UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEREMY J.,[1] | ) |
| Plaintiff, | ) No. 21 CV 128 |
| v. | ) Magistrate Judge Young B. Kim |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
| Defendant. | ) July 21, 2023 |

**MEMORANDUM OPINION and ORDER**

Jeremy J. seeks disability insurance benefits ("DIB") asserting he is disabled by various medical conditions, including degenerative disc disease of the lumbar and thoracic spine and right shoulder and obesity.[2] He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for DIB. Before the court are cross motions for summary judgment. For the following reasons, Jeremy's motion is granted, and the government's is denied:

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Plaintiff's first name and last initial in this opinion to protect his privacy to the extent possible.

[2] The medical record also shows diagnoses of anxiety, depression, and PTSD, (A.R. 196, 588, 1564), but the presiding Administrative Law Judge ("ALJ") noted that Jeremy did not allege that he has any limitations resulting from his mental impairments, (id. at 1524), and Jeremy does not challenge the ALJ's findings regarding them on appeal. (See R. 12, Pl.'s Br.)

**Procedural History**

Jeremy filed his DIB application in February 2015, alleging disability onset in May 2010. (Administrative Record ("A.R.") 15, 175-76, 1521.) His date last insured was December 31, 2015. (Id. at 17, 178, 1523.) At the administrative level, his application was denied initially and upon reconsideration. (Id. at 15, 68-81, 83-99.) After a hearing in June 2017, (id. at 33-67), an ALJ determined that Jeremy was not disabled, (id. at 15-27). Jeremy then filed a lawsuit, and in April 2019 the government agreed to voluntarily remand the case for further consideration. (Id. at 1598-99, 1602-10); *Jeremy J. v. Berryhill*, No. 18 CV 4565, Dkt. No. 24 (N.D. Ill. May 2, 2019). On remand the Appeals Council vacated the ALJ's first decision, finding that it "did not contain an adequate evaluation" of the opinions treating physicians Drs. Michael Zindrick and Edward Goldberg rendered, or of "the fact that [both physicians] kept [Jeremy] off work for over three years" following a May 2010 work injury. (A.R. 1613.)

In November 2019 Jeremy appeared with his attorney at a second hearing during which Jeremy, a medical expert ("ME"), and a vocational expert ("VE") testified. (Id. at 1547-70.) The ALJ ruled the following month that Jeremy was not disabled. (Id. at 1521-38.) The Appeals Council denied Jeremy's request for review, (id. at 1511-14), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Jeremy then filed this second lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 20).

2

**Analysis**

Jeremy argues that the ALJ's decision cannot stand because the ALJ improperly evaluated his treating physicians' opinions and his symptoms. (R. 12, Pl.'s Br.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and her decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered Jeremy's arguments and the record, the court concludes that remand is warranted.

**A.   Treating Physicians' Opinions**

Jeremy asserts that the ALJ failed to assign sufficient weight to opinions from his treating physicians—Drs. Timothy Lubenow and Michael Zindrick. (R. 12, Pl.'s Br. at 13-14.) A treating physician's opinion is entitled to "controlling weight" if it is

3

"well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence."[3] *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quotation and citation omitted). "Once contrary evidence is introduced, however, a treating physician's opinion becomes just one piece of evidence for the ALJ to evaluate." *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021) (internal citation omitted).

Jeremy argues that Drs. Lubenow's and Zindrick's opinions were well-supported by the medical evidence and consistent with the opinions from the Social Security Administration's ("SSA") independent consultant, Dr. Dinesh Jain, and the physician retained by Jeremy's former employer's workers compensation insurer, Dr. Edward Goldberg (who began treating Jeremy in November 2012). (R. 12, Pl.'s Br. at 13-14; see also A.R. 1534.) Dr. Lubenow treated Jeremy's pain associated with his failed back surgery syndrome and in January 2015 described Jeremy's prognosis as "guarded." (A.R. 587.) Dr. Lubenow opined that Jeremy could perform less than sedentary work and identified limitations resulting from Jeremy's physical impairments and "severe" pain, including: having to shift positions at will from sitting, standing, or walking; refraining from lifting and carrying items weighing greater than 10 pounds; having frequent interference with attention and concentration, even on simple work tasks; and taking four unscheduled breaks in an eight-hour workday. (Id. at 587-91.)

---

[3] On January 18, 2017, new regulations issued, eliminating the treating physician rule for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520(c). Because Jeremy filed his DIB claim in February 2015, (A.R. 175-76), the rule applies here.

The ALJ assigned "little to no weight" to Dr. Lubenow's opinion because Dr. Lubenow did not treat Jeremy until April and September 2015—months after Dr. Lubenow rendered his January 2015 opinion—and his clinical findings of normal gait and full motor function are inconsistent with that opinion. (Id. at 1535-36 (citing id. at 604).) The ALJ also found Dr. Lubenow's opinion "inconsistent with other opinion evidence indicating [Jeremy] could perform sedentary work." (Id. (see, e.g., id. at 1532 (giving "great weight" to the ME's and Dr. Goldberg's opinions that Jeremy could perform sedentary work)).) The ALJ further noted that Dr. Lubenow identified only tenderness and decreased flexion and extension to support his findings and did not explain why these factors necessitated the limitations he imposed. (Id. at 1535.)

The ALJ did not support his assessment of Dr. Lubenow's opinion with substantial evidence. The ALJ was entitled to discount Dr. Lubenow's opinion based on the length and nature of Dr. Lubenow's treating relationship with Jeremy. 20 C.F.R. § 404.1527(c). But contrary to the ALJ's finding, the records show that Jeremy was "under the care of Dr. Lubenow for pain management" as early as July 2014, (e.g., A.R. 407)—six months before his January 2015 opinion, (id. at 587-91). Moreover, in discounting Dr. Lubenow's opinion as inconsistent with other opinion evidence, the ALJ overlooked opinion evidence with which it was consistent. Indeed, in July 2014 Dr. Goldberg opined—consistent with Dr. Lubenow's opinion—that Jeremy could perform less than sedentary work. (See id. at 407 (opining that Jeremy could walk "up to 14 minutes at any one time and sit[] on a spotter [bouncing] for 3 minutes").) In so finding, Dr. Goldberg relied on a June 27, 2014 physical therapy

5

functional capacity evaluation ("FCE") indicating that Jeremy could walk for 14 minutes, sit with postural changes but only for 3 minutes when sitting and bouncing, crouch slowly but with increased pain, and could not return to work until completing work conditioning. (Id.; see also id. at 371-74.) The ALJ erred by not accounting for this evidence.

Jeremy also argues that the ALJ erred in evaluating orthopedist Dr. Zindrick's opinions. (See R. 12, Pl.'s Br. at 3-8, 11-14.) The court agrees. Dr. Zindrick treated Jeremy's back injury and related pain and submitted multiple opinions between mid-2010 and late 2012 stating that he should be "off work" as a result. (See, e.g., A.R. 294 (November 2012 opinion recommending Jeremy "remain off work" pending decision regarding surgical revision), 692 (June 2012 opinion recommending same), 700 (March 2012 opinion recommending same), 696 (April 2012 opinion stating Jeremy can return to work on "sedentary basis with a 10-pound lifting restriction"), 712 (February 2012 opinion recommending same), 730-31 (October 2010 opinion indicating "[u]nable to work" because of back "pain with flexion beyond 60 degrees, extension beyond 10 degrees and side bending beyond 20 degrees bilaterally" and "positive bilateral straight leg raise at 45 degrees for back and leg pain"), 733-34 (September 2010 opinion indicating "[u]nable to work" because of "[o]ngoing diskogenic back pain"), 742-43 (August 2010 opinion indicating "[u]nable to work"),748-50 (July 2010 opinion indicating same), 754-55 (June 2010 opinion indicating same and noting movement in "markedly antalgic fashion"). During this time period and with respect to each such opinion, Dr. Zindrick or his partners

6

personally examined Jeremy and rendered findings in treatment records of corresponding dates. (See id.)

Nevertheless, the ALJ largely rejected Dr. Zindrick's opinions, finding that he failed to support or explain them, and that a "complete inability to work" was not consistent with treatment records indicating "some limitation in motion, but full strength and intact sensation." (Id. at 1533.) The ALJ also pointed to Dr. Zindrick's April 2012 opinion stating that Jeremy could perform sedentary work to discount the rest and noted that this opinion is consistent with those offered by the ME and Dr. Goldberg. (Id.)

However, Dr. Zindrick treated Jeremy for more than two years and, contrary to the ALJ's finding, supported his opinions with physical examination notes. (E.g., id. at 294, 692, 696, 700, 712, 730-31, 733-34, 737-38, 742, 748, 754-55, 757-61.) For example, after Jeremy suffered on-the-job back and shoulder injuries in May 2010, he visited Dr. Zindrick, who recommended that Jeremy remain off work. (Id. at 761 (June 7, 2010 opinion).) The treatment notes from that visit show that Jeremy was suffering from back pain at an 8-10 out of 10 and right shoulder pain at 9 out of 10, and exhibited antalgic gait, limited lumbar range of motion, positive straight leg raises, palpable dorsal pedal pulses, and painful shoulder range of motion. (Id. at 758.)

Although the ALJ points to unspecified "contemporaneous treatment notes" showing full strength and intact sensation to suggest inconsistency in Dr. Zindrick's opinions, (see, e.g., id. at 1529, 1533 (citing id. at 427, 561 (Dr. Goldberg's notes), 700-

7

04 (Dr. Zindrick's and his partner's notes)), the ALJ ignored the extent to which Dr. Zindrick's opinions were largely consistent with his own treatment records, (see id. at 298, 301, 305, 307, 730-31 (finding on examination limited range of motion in lumbar spine); id. at 758 (noting increased pain "standing, sitting, moving around, bending, lifting and twisting" that becomes "better if he lies on the floor and rests")), and other medical opinion evidence in the record, (see, e.g., id. at 715, 717, 719, 722, 728, 740, 745, 753 (treating shoulder specialists' opinions that Jeremy should remain off work in June 2010, August 2010, January 2011, February 2011, April 2011, and June 2011).) Indeed, the ALJ overlooked the consistency between Dr. Zindrick's opinions and the opinion of the SSA's own consultant, Dr. Jain, who evaluated Jeremy in November 2015 and found that he had: "limited" range of motion of the lumbar spine, with flexion of 70 degrees, extension of 10 degrees, and lateral flexion of 10 degrees; "moderate difficulty" getting on and off the examination table; and an inability "to hop [on one leg]" because of low back pain. (Id. at 616.) Dr. Jain diagnosed Jeremy with "[l]umbar disc disease with neuralgia to the left lower extremity," status post lumbar spine surgery on three occasions, "[l]imited range of motion of the lumbar spine," and "[r]ight shoulder tendon surgery with labral repair" with "intermittent shoulder pain flare-up." (Id. at 616.) Given his findings, Dr. Jain restricted Jeremy to sitting for 30 minutes, standing for one hour, walking for no more than five blocks, and lifting and carrying no more than 30 pounds, (id.), but the ALJ assigned "little weight" to the SSA consultant's opinion, (id. at 1536 (finding Dr. Jain's lifting/carrying restriction inconsistent with other opinion evidence

8

limiting Jeremy to 10 pounds and noting that Dr. Jain did not explain how he arrived at his findings)). Regardless, the ALJ could not simply dismiss the consistency between Dr. Jain's opinion and the treating physicians' opinions.

The ALJ also ignored the fact that Dr. Zindrick's opinion is in many respects consistent with the objective medical evidence, including surgeries, imaging, and physical examinations. (R. 12, Pl.'s Br. at 14.) To be sure, after his May 2010 on-the-job injury, (A.R. 225), Jeremy underwent bilateral L5-S1 discectomy and posterior fusion, arthroscopic glenohumerol debridement, labral debridement, subacromial decompression, SLAP repair, distal clavical resection, and open biceps tendinosis, (id. at 399, 707, 714, 794-97, 1487-88). A May 2010 MRI of the lower spine revealed mild degenerative disc disease at L5-S1 and broad-based disc protrusion with mild mass effect on left S1 nerve root. (Id. at 628, 631, 686-87.) MRIs of the thoracic spine taken the following month showed mild spondylotic impressions upon the dural sac without focal disc herniation or significant stenosis. (Id. at 306, 751.) Jeremy reported pain at a level of 10 out of 10 in his lower back radiating down his left leg, with positive straight leg testing, numbness, and weakness. (Id. at 626, 642.) Jeremy at times had an antalgic gait, wore a back brace, and received a series of steroid injections. (Id. at 688-90, 693, 704, 721, 736, 743, 749; but see id. at 704 (normal gait).)

The government responds by explaining the "reasonable[ness]" of all medical opinions evaluated by the ALJ, rather than focusing solely on the treating physicians' opinions challenged by Jeremy. (R. 16, Govt.'s Mem. at 3-12.) For example, the government contends that the ALJ properly assigned "great weight" to the ME, "some

9

weight" to the state agency reviewing physicians, and "good weight" to Dr. Goldberg. (A.R. 1532-34.) In doing so, however, the ALJ overlooked troubling statements by the ME and cherry-picked evidence. As to the ME's testimony, during the hearing Jeremy's attorney referred to the June 2014 physical therapy FCE, (id. at 371-90), which concluded that Jeremy could not return to work until completing work conditioning, (id. at 373-74). Jeremy's attorney asked the ME about these findings, and the ME responded, "Well, he's restricted and he can't work, yes, during that time. I don't know how long that would have lasted." (Id. at 1555.) The ALJ did not flesh out that testimony and instead granted "great weight" to the ME's opinions that Jeremy could, among other activities, sit for six hours and stand/walk for four hours. (Id. at 1532.) Moreover, the attorney then asked the ME how he would assess Jeremy's reports of pain if conservative pain management offered no relief. (Id. at 1557.) The ME responded, "I've had a lot of patients work with pain. . . . If [Jeremy] has constant pain all day long that he has to tolerate, my question is why can't [he] go to work and tolerate it?"[4] (Id.) The ALJ then tried to clarify the ME's answer, (id. at 1557-58), but the ME's apparent disregard of Jeremy's reported pain symptoms—which are well documented in the medical record, (see, e.g., id. at 305, 307, 622, 626, 745, 752, 758-59)—is of significant concern to this court.

---

[4] The ME's logic appears to be that if Jeremy can tolerate pain at home, he can equally tolerate pain at work. Of course, the flaw in this logic is that at work, Jeremy must focus on his assigned duties and perform them without committing too many errors, not merely tolerate pain.

10

With regard to the reviewing physicians' opinions, (id. at 76-78, 93-99), Jeremy correctly points out that they did not review "the majority of the medical evidence" that the SSA ultimately received in this matter, (R. 17, Pl.'s Reply at 4). And as to Dr. Goldberg's opinions that Jeremy could perform sedentary work—to which the ALJ assigned "good weight"—the ALJ failed to grapple with the restrictions he said further limited Jeremy. (Compare A.R. 1534 with id. at 481.) Specifically, and as already mentioned, Dr. Goldberg opined that Jeremy was limited to walking 15 minutes at a time and sitting 3 minutes on the spotter—restrictions that are very different than the ME's restrictions. (Id. at 481.) Dr. Goldberg based this assessment on the physical therapy FCE. (See id. 371-90.) As such, a remand is warranted so that the ALJ may reconsider the treating physicians' opinions and support the evaluation with substantial evidence.

**B.     Symptom Assessment**

Jeremy also argues that the ALJ failed to consider his subjective symptom statements. (R. 12, Pl.'s Br. at 14-15.) When assessing a claimant's subjective reports, an ALJ considers: (1) objective medical evidence; (2) daily activities; (3) frequency and intensity of pain or other symptoms; (4) medication, treatment, and other measures to relieve pain or other symptoms; and (5) functional limitations. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ's symptom evaluation is generally entitled to great deference because he can observe the claimant's credibility firsthand. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a court will not disturb the evaluation if

11

it is based on specific findings and evidence and not "patently wrong"—that is, so long as it does not "lack[] any explanation or support." *Id.* at 815-16 (citing *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *see also Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (stating that court's review of ALJ's symptom assessment is "extremely deferential").

Given that a remand is required in this case, the ALJ should conduct a new symptom assessment to ensure Jeremy's subjective allegations of pain are appropriately credited. Although the government contends that the ALJ compared Jeremy's pain symptoms with treatment records, (R. 16, Govt.'s Mem. at 13), the Seventh Circuit has repeatedly held that allegations regarding the limiting effects of pain "may not be disregarded solely because they are not substantiated by the objective medical evidence," (R. 12, Pl.'s Br. at 14-15 (quoting *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016) (citation omitted))). Here, the record is replete with references to pain associated with Jeremy's impairments. Insofar as the ALJ relied on the ME's testimony to support the symptom assessment, (R. 16, Govt.'s Mem. at 14-15), as noted, the court has concerns regarding the ME's apparent trivialization of Jeremy's pain complaints, (A.R. 1557).

Additionally, on remand the ALJ should take care not to equate Jeremy's daily activities—including his ability to care for his child—with an ability to work full time. Any reliance on daily activities must be considered in light of the limitations Jeremy experiences when performing those activities. And the Seventh Circuit has admonished that "sheer necessity may compel one to perform tasks at home no matter

12

how painful, such as taking care of one's child." *Forsythe v. Colvin*, 813 F.3d 677, 679 (7th Cir. 2016) ("[E]xtrapolating from what people do at home, often out of necessity, to what they could do in a 40-hour-a-week job is perilous. At home one has much greater flexibility about when and how hard and how continuously to work; one can rest during the day (which one can't do in a 9-to-5 job)." (citations omitted)).

## Conclusion

For the foregoing reasons, Jeremy's motion for summary judgment is granted and the government's is denied.

ENTER:

_____
**Young B. Kim**
**United States Magistrate Judge**